IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| JAMES E. BACHMAN, | ) | |
| | ) | CASE NO. BK15-80069 |
| Debtor(s). | ) | A15-8043 |
| DANIEL H. DUNKER and | ) | |
| RICHARD F. HILL, | ) | |
| | ) | |
| Plaintiffs, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES E. BACHMAN, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the plaintiffs' motion for summary judgment (Fil. No. 79) and resistance by the debtor-defendant (Fil. No. 85). Lauren R. Goodman and James J. Niemeier represent the plaintiffs, and the debtor represents himself. Evidence and a brief were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

The plaintiffs in this adversary proceeding are creditors who loaned the debtor-defendant more than $200,000 for his company. They filed an amended complaint to object to the dischargeability of the debt under 11 U.S.C. §§ 523(a)(2)(A) (obtaining funds through false representations) and 523(a)(4) (fraud or defalcation by a fiduciary) and to object to the debtor's discharge under 11 U.S.C. § 727(a)(2) (transferring property to an insider with the intent of hindering, delaying, or defrauding creditors). The plaintiffs now move for summary judgment on their claims under §§ 523(a)(2)(A) and 727(a)(2)(A).

I. Summary Judgment Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)

(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

## II. Facts

The following facts are uncontroverted for purposes of this motion:

1. The defendant, James E. Bachman, is the debtor in a case filed under Chapter 7 of Title 11 of the United States Code, Case No. 15-80069, currently pending in the United States Bankruptcy Court for the District of Nebraska. The bankruptcy case was filed on January 19, 2015. Joseph H. Badami was appointed as the Chapter 7 trustee in this case.

2. This adversary proceeding was timely commenced on December 15, 2015.

3. Mr. Bachman is a resident of Douglas County, Nebraska.

4. Mr. Bachman was president of Eran Industries, Inc. ("Eran"), running its business operations until its assets were transferred to LeafProof Products, LLC ("LeafProof"). Mr. Bachman was the sole shareholder at the time its assets were transferred to LeafProof.

5. Mr. Bachman purchased his interest in Eran in 1996. Eran was in the business of manufacturing and selling gutter covers to customers nationwide.

6. Eran was generally profitable since its inception.

7. In late 2006 and early 2007, plaintiff Richard F. Hill loaned Eran $100,000. He received a promissory note from Eran dated February 1, 2006, for that amount plus 12% interest per annum. Mr. Bachman personally guaranteed repayment of the loan.

8. In early 2007, plaintiff Daniel H. Dunker loaned Eran $122,000. He received a promissory note from Eran dated February 1, 2006, for $125,000 plus interest at 12% per annum. Mr. Bachman personally guaranteed repayment of the loan.

9. In the years following the loans, Mr. Bachman made numerous representations to Dr. Dunker and Dr. Hill that Eran's financial condition precluded it from repaying the loans.

10. Note payments totaling $14,000 were made to Dr. Hill in 2011, 2012, and 2013.

11. Note payments totaling $16,600 were made to Dr. Dunker in 2011, 2012, and 2013.

12. In the years 2011, 2012, 2013, and 2014, Mr. Bachman and his wife Adella Bachman withdrew funds from Eran and LeafProof ranging in amount from $286,800 to $440,200. The Bachmans also used funds from Eran bank accounts to pay personal family expenses, including vacations and their children's college tuition. The personal expenses paid by Eran and Leafproof were purportedly treated as draws/income to Mr. and Mrs. Bachman.

13. On February 19, 2014, Dr. Dunker and Dr. Hill commenced suit against Eran and Mr. Bachman in the District Court of Douglas County, Nebraska.

14. The state court entered summary judgment in favor of Dr. Hill and Dr. Dunker and against Eran and Mr. Bachman on October 20, 2014. Dr. Hill was awarded $175,589.04 and Dr. Dunker was awarded $213,354.79, both with post-judgment interest. Said judgments were final and non-appealable as of the petition date.

15. Dr. Hill has filed a proof of claim in Mr. Bachman's bankruptcy case for $175,589.04.

16. Dr. Dunker has filed a proof of claim in Mr. Bachman's bankruptcy case for $213,354.79.

17. Mr. Bachman executed a quit claim deed for his primary residence at 1138 South 185th Circle, Omaha, Nebraska, on August 21, 2014, and deeded his interest in this property to his wife.

18. Also in August 2014, Mr. Bachman transferred his interest in a 2002 Chevrolet Trailblazer, his 50% interest in a 2003 Chevrolet Suburban, and his 50% interest in a 2005 Cobalt Boat to Mrs. Bachman.

19. In August or September 2014, Mr. Bachman removed his name from the First Westroads Bank checking account held with Mrs. Bachman.

20. In October 2014, Mr. Bachman transferred Berkshire Hathaway Class B stock or the proceeds from sale of such stock that he owned to Mrs. Bachman.

21. On September 1, 2014, LeafProof was formed. It was owned solely by Mrs. Bachman.

22. In August 2014, Mr. Bachman, as Eran's president, executed an asset and real estate purchase agreement which transferred all of Eran's assets to LeafProof. The stated consideration for LeafProof's purchase of Eran's assets was the assumption of the debt owed by Eran to First Westroads Bank. In addition to Drs. Hill and Dunker, Eran also owed debts to professionals including Fitzgerald Schorr; Hovey, Williams; Spencer Fane; and Weber and Thorson.

23. Eran was insolvent at the time of the sale of its assets to LeafProof.

24. At all times relevant hereto, Eran was a Subchapter S corporation.

25. LeafProof operated the same type of business as Eran and operated in the same location.

26. After unsuccessful attempts to levy on Eran's assets and garnish Eran for wages and funds owed, Dr. Hill and Dr. Dunker filed an application to determine garnishee liability against Eran. A hearing was held on December 18, 2014, in Douglas County, Nebraska, District Court and thereafter a debtor's examination of Mr. Bachman was conducted.

27. On January 20, 2015, LeafProof filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Nebraska.

28. Mr. Bachman owed a fiduciary duty to all the creditors of Eran and Leafproof.

III. Discussion

A.      11 U.S.C. § 727(a)(2)(A)

Section 727(a)(2) of the Bankruptcy Code states, in relevant part, that:

> (a) The court shall grant the debtor a discharge, unless —
>     . . .
>     (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
>         (A) property of the debtor, within one year before the date of the filing of the petition[.]

To prevail on the complaint, the plaintiffs must show that (1) the debtor's actions took place within twelve months prior to the filing of the petition for bankruptcy relief; (2) the debtor took the actions with the intent to hinder, delay or defraud creditors; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981). There is a presumption of fraud in § 727(a)(2) cases when a debtor transfers valuable property without payment. *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) (citing *The Abbott Bank-Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239 (8th Cir. 1991)). "Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors." *Id.*

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Factors to consider in determining whether a debtor acted with intent to hinder, delay or defraud are: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument effecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. *MWI Veterinary Supply Co. v. Rodgers (In re Rodgers)*, 315 B.R. 522, 531 (Bankr. D.N.D. 2004).

Denial of discharge is "a serious matter not to be taken lightly by a court." *McDonough v. Erdman (In re Erdman)*, 96 B.R. 978, 984 (Bankr. D.N.D. 1988). The provisions of § 727 are strictly construed in the debtor's favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). The objecting party bears the burden of establishing each element of § 727 by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Kaler v. Charles (In re Charles)*, 272 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012).

The plaintiffs in this case have established each of the elements. The facts show that Mr. Bachman transferred his interests in the family residence (valued at $650,000 on the debtor's Schedule A), two inoperable family vehicles, boat (valued at $25,885 on the debtor's Schedule B), joint personal checking account, and investment stocks or their proceeds (valued at $44,000 on the debtor's Statement of Financial Affairs) to Mrs. Bachman for no consideration. He transferred all of Eran Industries' assets to LeafProof, wholly owned by Mrs. Bachman, for Mrs. Bachman's assumption of Eran's bank loan. Mr. Bachman made all of these transfers within five months prior to the bankruptcy petition date, and within weeks before judgment was entered against him in the doctors' state court lawsuit.

Most importantly, Mr. Bachman made these transfers to hinder, delay, or defraud his creditors. He admitted this element while under oath in a state court hearing on Dr. Dunker and Dr. Hill's application to determine garnishee liability and orders on motions in aid of execution on December 18, 2014. Mr. Bachman and counsel for Dr. Hill and Dr. Dunker sparred over the purpose of the transfers, with Mr. Bachman asserting he was trying to preserve the home for his family while attempting to negotiate a sale of the business to a third party and denying that the transfers were fraudulent under Nebraska law. *See* Decl. of Lauren R. Goodman, Ex. C at 22:1-23:2. However, when Ms. Goodman pointedly asked "Did you intend to thwart the plaintiffs' efforts to recover assets by transferring them out of your immediate name?", Mr. Bachman unequivocally answered "Absolutely." *Id.* at 23:3-6.

In addition to Mr. Bachman's explicit statement of intent to defraud creditors, the weight of the circumstantial evidence also supports such a finding. While the factors listed above are generally

recognized badges of fraud, "[t]he court is not constrained by any list of badges and may consider "'any other factors bearing upon the issue of fraudulent intent.'" *Horizon Fin'l Bank v. Borstad (In re Borstad)*, 550 B.R. 803, 829-30 (Bankr. D.N.D. 2016) (quoting *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 863 (8th Cir. 2015) (quoting *Jensen v. Dietz (In re Sholdan)*, 217 F.3d 1006, 1009 (8th Cir. 2000))). "In other words, courts look to whether the aggregate of facts demonstrates an inference of fraud rather than requiring the plaintiff to show a majority or any specific number of the badges." *Borstad*, 550 B.R. at 830 (quoting *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008)). "The presence of a single badge creates suspicion; the confluence of several can create a presumption of fraudulent intent." *Borstad*, 550 B.R. at 830 (quoting *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998)).

Here, Mr. Bachman made the transfers to a family member for little or no consideration, but continued to work for LeafProof, live in the family home, and otherwise benefit from the property transferred. All of the transfers were made while the creditors' state court lawsuit was pending, but before judgment had been entered. It appears that Mr. Bachman transferred substantially all of his property interests to Mrs. Bachman. These facts lead directly to the inference that the transfers were made to harm Dr. Dunker's and Dr. Hill's efforts to collect on their judgment.

Mr. Bachman's response to the motion for summary judgment raises three arguments. First, he alleges the funds from Drs. Dunker and Hill were equity investments in Eran, not loans. The state court found otherwise in its order granting summary judgment, and Mr. Bachman has provided no evidence in support of this contention. Second, he argues that the doctors' judgments were subordinate to Eran's pre-existing debt. This argument ignores the fact that the judgments were entered jointly and severally against Mr. Bachman personally, and it suggests a fundamental misunderstanding of bankruptcy law. Third, he asserts he made the transfers to benefit the corporation. The evidence before the court overwhelmingly indicates his actions were intended to benefit and protect himself and his family's lifestyle at the expense of Dr. Dunker and Dr. Hill.

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted).

> [I]f the moving party meets its burden, the party opposing the motion must establish a genuine factual issue. *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 915 (8th Cir. 2013). The party opposing the motion may not rest on mere allegations or pleading denials, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010), or "merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoted in *Residential Funding*, 725 F.3d at 915). Instead, the party opposing the motion must substantiate its allegations with admissible, probative evidence that would permit a finding in its favor on more than speculation or conjecture. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoted in *Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1190-91 (8th Cir. 2014)); *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citing *Kiemele v. Soo*

*Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

*Hansmeier v. McDermott (In re Hansmeier)*, 558 B.R. 299, 302 n.7 (B.A.P. 8th Cir. 2016).

Here, the debtor has failed to demonstrate the existence of any factual dispute, as he did not submit any evidence in opposition to the motion for summary judgment. Although § 727 is strictly construed in the debtor's favor, a bankruptcy discharge and a fresh start are privileges, not rights, and are limited to the honest but unfortunate debtor. *Borstad*, 550 B.R. at 828; *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003). The plaintiffs have established by a preponderance of the evidence that Mr. Bachman transferred his interests in property to his wife, within one year before filing his bankruptcy petition, with the intent to hinder, delay, or defraud creditors, and they are entitled to judgment on that cause of action.

Due to the denial of discharge under 11 U.S.C. § 727(a)(2)(A), the causes of action under § 523 need not be addressed.

### IV.  Conclusion

The plaintiffs have clearly established all of the elements for denial of discharge under § 727(a)(2)(A). Accordingly, the debtor is denied a discharge of his debts because he transferred his interest in property to his wife within a year of the petition date in order to prevent the plaintiffs from collecting on their judgments.

IT IS ORDERED: The plaintiffs' motion for summary judgment (Fil. No. 79) is granted. Separate judgment will be entered.

DATED:  July 20, 2017.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    James E. Bachman        *Lauren R. Goodman
    *James J. Niemeier       U.S. Trustee
Movant (*) is responsible for giving notice to other parties if required by rule or statute.